Baolin Chen, OSB No. 93232
Chen & Mu Attorneys
1255 NW 9th Ave, Suite 115
Portland, OR 97209
Telephone (503) 222-3384
Fax (503) 296-5821
baolinchen@usworkingvisa.com
Attorney for Plaintiffs

**UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF OREGON**

| | |
|---|---|
| Paul B. Bochner,<br><br>and<br><br>Zhiying Liu,<br><br>PLAINTIFFS,<br><br>vs.<br><br>Markwayne Mullin, in his official capacity as Secretary of the U.S. Department of Homeland Security;<br><br>Joseph B. Edlow, in his official capacity as Director of U.S. Citizenship and Immigration Services;<br><br>Margaret Rosenast, in her official capacity as USCIS Portland Field Office Director;<br><br>Todd Blanche, in his official capacity as Attorney General of the United States,<br><br>DEFENDANTS. | Case No.: .<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE ADMINISTRATIVE PROCEDURE ACT**<br><br><u>Immigration Case</u> |

**COMPLAINT**

Plaintiffs Paul B. Bochner and Zhiying Liu, a married couple, bring this Complaint against Defendants Markwayne Mullin, in his official capacity as Secretary of the U.S. Department of Homeland Security; Joseph B. Edlow, in his official capacity as Director of U.S. Citizenship and Immigration Services; Margaret Rosenast, USCIS Portland Field Office Director; and Todd Blanche, acting Attorney General of the United States (collectively, the "Defendants"), and allege and state as follows:

### I. INTRODUCTION

1.      This case concerns the arbitrary denial of a United States citizen's Form I-130 Petition for Alien Relative and the derivative denial of his spouse's Form I-485 Application to Register Permanent Residence or Adjust Status. Plaintiffs seek judicial review under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, because the United States Citizenship and Immigration Services ("USCIS") denied their applications through decisions that were arbitrary, capricious, contrary to law, unsupported by reasoned decision-making, and inconsistent with governing statutes, regulations, agency policy, and binding judicial precedent.

2.      This case is not about a lack of evidence. It is about an agency that refused to evaluate abundant evidence under the legal standards that Congress, the federal courts, and USCIS itself require.

3.      Congress created the immediate-relative visa process to preserve and promote family unity by allowing United States citizens to petition for their spouses' permanent residency. The governing legal question is straightforward: whether the parties entered the marriage in good faith with the intent to establish a life together, rather than for the purpose of evading the immigration laws. See *Bark v. INS*, 511 F.2d 1200 (9th Cir. 1975); *Matter of*

COMPLAINT -- 2

*Laureano*, 19 I. & N. Dec. 1 (BIA 1983). That determination must be made under the preponderance-of-the-evidence standard by evaluating the totality of the evidence contained in the administrative record.

4.    Plaintiffs submitted extensive documentary and testimonial evidence demonstrating the bona fide nature of their marriage. Their submissions included, among other things, documentation of their shared residence, joint financial records, tax filings, insurance policies, jointly held property, photographs documenting their relationship over several years, and numerous detailed declarations from family members and longtime friends possessing firsthand knowledge of Plaintiffs' married life.

5.    When USCIS later issued a Notice of Intent to Deny ("NOID"), Plaintiffs did not ignore the agency's concerns. They responded comprehensively and in good faith. Their response addressed every issue identified by USCIS, provided additional documentary evidence, submitted further sworn declarations, explained alleged inconsistencies, and cited the governing legal authorities demonstrating why the evidence satisfied the applicable burden of proof.

6.    Rather than evaluating that evidence as a whole, USCIS fragmented the record into isolated pieces, examined each item independently, and repeatedly dismissed evidence without explaining why Plaintiffs' responses failed to resolve the concerns previously identified in the NOID.

7.    USCIS further discounted numerous declarations submitted by individuals with personal knowledge of Plaintiffs' marriage on the grounds that several declarations were organized using similar formatting and because copies of the declarants' identification documents were not attached.

COMPLAINT -- 3

8.      Those reasons appear nowhere in the Immigration and Nationality Act, the implementing regulations, or the USCIS Policy Manual.

9.      To the contrary, USCIS's own Policy Manual expressly recognizes that strict rules of evidence do not apply in immigration benefits adjudications and that officers may consider a broad range of oral and documentary evidence. Likewise, 8 C.F.R. § 204.2 expressly identifies affidavits from persons with personal knowledge of the marriage as appropriate evidence supporting an I-130 petition.

10.      Nevertheless, USCIS imposed evidentiary requirements that exceed those found not only in the immigration laws but even those applicable in federal civil litigation, where declarations executed under penalty of perjury pursuant to 28 U.S.C. § 1746 are routinely accepted without attached government-issued identification.

11.      USCIS also repeatedly relied upon speculation rather than evidence. Throughout its decision, USCIS inferred fraudulent intent from entirely innocent facts, including Plaintiffs' employment history, financial arrangements, mailing addresses, lease documentation, banking activity, and the formatting of witness declarations. Yet the agency identified no affirmative evidence demonstrating that Plaintiffs entered their marriage for the purpose of evading the immigration laws. Instead, USCIS repeatedly stated that various circumstances "raised questions," "revealed inconsistencies," or "called into question" the bona fides of the marriage without explaining why Plaintiffs' sworn explanations and corroborating documentary evidence failed to resolve those concerns.

12.      Administrative agencies possess considerable discretion when evaluating evidence. They do not possess discretion however, to disregard governing legal standards,

COMPLAINT -- 4

ignore material evidence, invent evidentiary requirements found nowhere in the law, or substitute speculation for reasoned analysis.

13.     The Administrative Procedure Act requires agencies to engage in reasoned decision-making. Agencies must consider the entire administrative record, evaluate all material evidence, explain why contrary evidence is rejected, articulate a rational connection between the facts found and the conclusions reached, and follow their own published rules and policies.

14.     USCIS did none of those things here. Instead, the agency effectively elevated Plaintiffs' burden beyond the governing preponderance-of-the-evidence standard by requiring Plaintiffs to disprove every conceivable suspicion while simultaneously discounting corroborative evidence under standards not found in the INA, the implementing regulations, or the USCIS Policy Manual.

15.     The resulting decision reflects a pattern of legal error rather than merely a disagreement concerning the weight of the evidence.

16.     Specifically, USCIS:

a. applied an incorrect legal standard governing bona fide marriages;

b. failed to evaluate the record as a whole;

c. failed to meaningfully address Plaintiffs' explanations submitted in response to the NOID;

d. ignored substantial favorable evidence;

e. drew irrational inferences from innocent facts;

f. discounted competent eyewitness testimony based upon extra-regulatory evidentiary requirements;

COMPLAINT -- 5

g. departed from its own published evidentiary policies;

h. failed to articulate a rational explanation connecting the evidence to its conclusions; and

i. denied Plaintiff Beneficiary's adjustment application solely because of the unlawful denial of the underlying I-130 petition.

17. These errors were not harmless. As a direct consequence of USCIS's unlawful decision, Plaintiff Beneficiary lost eligibility to adjust status, lost employment authorization, lost advance parole authorization, and now faces the possibility of removal proceedings despite having married a United States citizen and having submitted substantial evidence establishing the bona fide nature of the marriage.

18. The APA exists precisely to prevent arbitrary administrative decision-making of this nature.

19. Plaintiffs therefore respectfully request that this Court declare USCIS's decisions unlawful, vacate the denial of both the Form I-130 and the derivative Form I-485, and remand the matter to USCIS with instructions to reconsider the applications under the proper legal standards and in accordance with the Administrative Procedure Act.

## II. JURISDICTION AND VENUE

20. This action arises under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, and the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 et seq.

21. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

22. Plaintiffs seek judicial review pursuant to 5 U.S.C. § 702, which waives the sovereign immunity of the United States for actions seeking relief other than money damages against federal agencies and officers acting in their official capacities.

COMPLAINT -- 6

23.     Judicial review is authorized under 5 U.S.C. § 704 because USCIS's denial of Plaintiff Petitioner's Form I-130 Petition for Alien Relative constitutes a final agency action for which there is no other adequate remedy in a court.

24.     USCIS subsequently denied Plaintiff Beneficiary's Form I-485 Application to Register Permanent Residence or Adjust Status solely because the underlying Form I-130 petition had been denied. That denial likewise constitutes final agency action reviewable under the APA.

25.     Plaintiffs do not ask this Court to substitute its judgment for that of the agency on disputed factual matters. Rather, Plaintiffs seek review of whether USCIS complied with the requirements of federal law, followed the governing legal standards, engaged in reasoned decision-making, and acted in a manner that was not arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.

26.     No statute requires Plaintiffs to pursue additional administrative remedies before seeking judicial review of these final agency actions. Under *Darby v. Cisneros*, 509 U.S. 137 (1993), federal courts may not impose an exhaustion requirement unless expressly required by statute or by agency rule that also renders the administrative decision inoperative pending appeal. Neither condition exists here.

27.     Although USCIS regulations permit the filing of Form I-290B in certain circumstances, no statute or regulation requires Plaintiffs to seek reconsideration or reopening before obtaining judicial review under the APA. See 8 C.F.R. § 103.5. "the INA does not require aliens to appeal denials of spousal immigration petitions to the BIA before seeking relief in federal court." *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006). See also 8 C.F.R. §103.3(a)(ii) (providing that a party "may" appeal to the BIA).

COMPLAINT -- 7

28.    Venue is proper in the District of Oregon pursuant to 28 U.S.C. § 1391(e)(1) because Plaintiffs reside in this District, the underlying adjudications occurred within this District, and a substantial part of the events giving rise to this action occurred in this District.

29.    Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

30.    This Court possesses authority under 5 U.S.C. § 706 to hold unlawful and set aside agency action that is arbitrary, capricious, an abuse of discretion, contrary to law, unsupported by required procedures, or otherwise inconsistent with the Administrative Procedure Act.

### III. PARTIES

31.    Plaintiff Zhiying Liu is a citizen and national of China who resides in Reedsport, Oregon, with her husband, Paul Bochner, a U.S. citizen.

32.    Defendant Markwayne Mullin is Secretary of the United States Department of Homeland Security ("DHS") and has the ultimate authority over the operations of DHS, which includes USCIS. In that capacity, he is responsible for the administration and enforcement of the immigration laws of the United States.  Defendant Mullin is sued in his official capacity.

33.    Defendant Joseph B. Edlow is Director of USCIS and has ultimate authority over the operations of USCIS within DHS, including adjustment of status. In that capacity, she is responsible for the administration of immigration and citizenship benefits, including Plaintiff's Form I-485.  Defendant Joseph B. Edlow is sued in his official capacity.

34.    Defendant Margaret Rosenast is the USCIS Portland Field Office Director and is responsible for adjudicating applications at the Portland Field Office. Defendant Margaret Rosenast is sued in her official capacity.

COMPLAINT -- 8

35.     Defendant Todd Blanche is the Acting U.S. Attorney General and is responsible for the administration and enforcement of immigration laws. Defendant Blanche is sued in his official capacity.

**IV. FACTUAL BACKGROUND**

**A. Plaintiffs' Relationship Developed Naturally and Culminated in a Bona Fide Marriage**

36.     Plaintiff Paul B. Bochner is a citizen of the United States. Plaintiff Zhiying Liu is his lawfully married spouse.

37.     Plaintiffs' relationship did not begin as an immigration case. It began as a personal relationship that gradually developed into a committed partnership. Over time, Plaintiffs became emotionally committed to one another, regularly spent time together, introduced one another to family members and friends, and ultimately decided to marry.

38.     On June 13, 2023, Plaintiffs were lawfully married in the State of Oregon. See **Exhibit A:** Plaintiffs' Marriage Certificate.

39.     At the time they married, both intended to establish a life together as husband and wife. Their marriage was entered into because of their mutual affection, companionship, and commitment.

40.     Since their marriage, Plaintiffs have continued to conduct themselves as husband and wife despite employment obligations requiring flexibility in where they lived and worked.

41.     On October 23, 2023, Plaintiff Bochner filed Form I-130, Petition for Alien Relative with U.S. Citizenship an Immigration Services (USCIS). See **Exhibit B:** I-130 Receipt Notice. On the same day, Plaintiff Liu concurrently filed Form I-485 Application to Register Permanent Residence or Adjust Status. See **Exhibit C:** I-485 Receipt Notice.

**B. Plaintiffs Built a Shared Married Life**

COMPLAINT -- 9

42.    Plaintiffs' married life cannot be understood by examining isolated documents.

43.    Like many married couples, Plaintiffs organized their daily lives around employment, financial realities, and family responsibilities.

44.    Plaintiff Liu's employment frequently required her to remain in the Portland metropolitan area.

45.    Plaintiff Bochner simultaneously maintained his longtime residence on the Oregon coast.

46.    Plaintiffs therefore divided their time between the coast and the Portland area while continuing their marital relationship. They regularly traveled between those locations. They maintained frequent contact, celebrated holidays together, attended social gatherings together, maintained ongoing relationships with one another's friends and relatives, and shared daily household responsibilities whenever residing together.

47.    Their work schedules occasionally required temporary physical separation, but they consistently maintained their marital relationship.

48.    Plaintiffs repeatedly explained these circumstances during their USCIS interview and again in sworn declarations responding to the NOID.

**C. Plaintiffs Integrated Their Financial Affairs**

49.    Plaintiffs gradually integrated their financial affairs following marriage. They jointly maintained bank accounts and automobile insurance, jointly titled a motor vehicle, federal income tax returns, jointly executed residential lease documents, and jointly maintained utility services associated with their residence. Plaintiffs also submitted cancelled checks and banking records demonstrating their ongoing financial relationship.

COMPLAINT -- 10

50.     None of these documents alone was intended to establish the bona fide nature of the marriage. Rather, each document represented one component of Plaintiffs' larger shared financial life.

**D. Plaintiffs Created a Comprehensive Documentary Record of Their Marriage**

51.     Throughout the pendency of the petition, Plaintiffs accumulated substantial documentary evidence reflecting their ongoing married life.

52.     That evidence included: federal tax returns; joint banking records; cancelled checks; residential leases; amended lease agreements; utility documentation; joint automobile title; automobile insurance; renters insurance; photographs; correspondence; and numerous sworn declarations. Collectively, these records reflected Plaintiffs' continuing efforts to build and maintain a life together.

53.     The administrative record ultimately exceeded one hundred pages of documentary evidence. See **Exhibit D:** Documents Submitted by Plaintiffs Prior to I-130 Interview.

**E. USCIS Conducted an In-Person I-130 Interview**

54.     On December 17, 2024, Plaintiffs appeared before USCIS for an I-130 interview. See **Exhibit E:** Plaintiffs' Interview Notice.

55.     Both Plaintiffs answered extensive questions concerning their relationship. USCIS questioned Plaintiffs regarding their residences, employment, financial arrangements, prior marriages, daily routines, and other aspects of married life. Plaintiffs cooperated fully.

56.     USCIS did not deny the petition following the interview. Instead, USCIS continued reviewing the administrative record.

**F. USCIS Issued a Notice of Intent to Deny**

COMPLAINT -- 11

57.    Dragging its feet for one year and a half after the in-person interview, on June 8, 2026, USCIS issued a Notice of Intent to Deny (NOID). See **Exhibit F:** Copy of USCIS's NOID.

58.    The NOID questioned, among other matters, prior marriage information, address history, employment history, California mailing address, Oklahoma employment, lease documents, bank records, tax records, utility evidence, joint residence, and witness declarations.

59.    The NOID did not conclude that Plaintiffs had entered a fraudulent marriage. Instead, USCIS requested further explanation concerning these matters.

**G. Plaintiffs Responded With Extensive Additional Evidence**

60.    On or about July 6, 2026, Plaintiffs timely submitted an extensive NOID response. See **Exhibit G:** Copy of Plaintiffs' NOID Response.

61.    USCIS acknowledged receiving that response.

62.    Plaintiffs' response consisted not merely of legal argument. Plaintiffs corrected forms where appropriate. They submitted new documentary evidence, including detailed sworn declarations. They addressed every issue individually. They produced objective documentary evidence corroborating their explanations.

63.    Among the additional materials submitted were: corrected Forms I-130 and I-130A; Plaintiff Bochner's declaration; Plaintiff Liu's declaration; complete lease documents; Oregon DMV title; automobile insurance; renters insurance; utility documentation; joint banking records; cancelled checks; federal income tax returns; birth certificate; divorce documentation; and five independent witness declarations, both in their original handwritten format by the declarant, as well as a more formal and detailed version of the same declaration signed under penalty of perjury.

COMPLAINT -- 12

**H. Plaintiffs Personally Explained Every Alleged Discrepancy**

64.    Plaintiff Bochner submitted a lengthy declaration explaining every issue raised by USCIS. He explained omitted marital history with his ex-wife, address history, work arrangements, financial practices, and why certain records were unavailable.

65.    Plaintiff Liu likewise submitted a comprehensive declaration. She explained her California mailing address, her Oklahoma employment, her asylum application, her daughter's information, and the practical realities of Plaintiffs' marriage.

66.    These declarations were submitted under penalty of perjury.

**I. Independent Witnesses Corroborated Plaintiffs' Marriage**

67.    Plaintiffs supplemented the record with more formal versions of declarations signed under penalty of perjury from individuals possessing firsthand knowledge of the marriage. Four out of five of these individuals previously submitted declarations which were either handwritten or personally written and signed by the declarant using their own letterhead. All of these declarants drafted new, more detailed declarations, and signed them under penalty of perjury in support of Plaintiffs' NOID Response.

68.    Kurt Hamen submitted a declaration. Mr. Hamen, a friend of Plaintiff Bochner for over 30 years, declared that he has personally observed Plaintiffs interacting as a committed couple on numerous occasions. He has visited their home, shared meals, and witnessed them engaging in joint activities like outdoor outings, where they appeared comfortable and affectionate with one another. Based on these firsthand experiences and his long-term relationship with Plaintiff Bochner, Mr. Hamen concluded that the marriage is genuine, stable, and built on mutual companionship.

COMPLAINT -- 13

69.     Gabriel Orenstein, a cousin of Paul's, submitted a declaration detailing his personal observations of the couple since 2023. Mr. Orenstein described the Plaintiffs' home environment as warm, welcoming, and well-maintained. Based on his firsthand experiences during shared meals and visits, he observed that Paul and Zhiying consistently show mutual support, care, and affection for one another, and he noted that Paul frequently speaks of the happiness Zhiying brings to his life.

70.     Kent Hickam, an attorney who has known the couple since 2018, submitted a declaration detailing his personal observations of Plaintiffs in various social settings, including shared holidays, fishing, and crabbing trips. Mr. Hickam noted the close friendship between his wife and Plaintiff Liu and emphasized that he has consistently observed Plaintiff Bochner treating Plaintiff Liu with kindness, patience, and respect. Based on his firsthand experience, Mr. Hickam concluded that the marriage is genuine, loving, and entered into in good faith.

71.     John Robert King, who has known the couple since the beginning of their relationship, submitted a declaration based on his firsthand knowledge of their marriage. He described regular interactions, shared fishing trips, and social visits, during which he observed the couple growing closer and supporting one another through challenges. He noted Paul's consistent patience, kindness, and attention to Zhiying's well-being, concluding that their relationship is genuine, loving, and deeply committed.

72.     Dr. David Allen, Paul Bochner's cousin, submitted a declaration based on his long-standing family bond with Paul. Having known Paul since childhood and spent time with the couple during their visits to Los Angeles in 2021, 2023, and 2024, Dr. Allan provided firsthand observations of their relationship. He described them as a supportive, caring, and affectionate couple who complement one another well. Based on his interactions with

COMPLAINT -- 14

them—including sharing meals and providing therapeutic services—Dr. Allan concluded that their marriage is genuine, stable, and built on mutual respect and commitment.

73.    None of these declarants merely expressed generalized opinions. Instead, each described detailed observations derived from personal and first-hand knowledge.

74.    Each declaration was executed under penalty of perjury.

75.    The format of the declarations reflects the parties' desire to provide USCIS with clearly labeled declarations that conform to their requirements for sworn declarations signed under penalty of perjury rather than the use of a template. All declarations were drafted by the declarants themselves and then transferred into the more formal format to ensure perjury requirements were met. This is proven by the original handwritten, signed declarations which were also submitted along with the more formal versions.

76.    These witnesses were not merely "character witnesses." They were fact witnesses. Each possessed personal knowledge acquired through firsthand observation over an extended period. Collectively, their declarations corroborated Plaintiffs' testimony concerning their courtship, marriage, cohabitation, daily life, and continuing marital relationship. Their testimony constituted precisely the type of third-party evidence contemplated by 8 C.F.R. § 204.2(a)(1)(i)(B) and recognized by *Matter of E-M-*. USCIS nevertheless discounted these declarations based principally upon formatting similarities and the absence of attached identification documents rather than the substance of the witnesses' firsthand observations.

**J. Plaintiffs' NOID Response Explained the Governing Law**

77.    Plaintiffs did not rely solely upon factual evidence. Their response also cited the governing legal authorities. The response centers on the argument that USCIS failed to apply the

COMPLAINT -- 15

correct legal standards and ignored the totality of the evidence in favor of focusing on minor clerical discrepancies.

78.    Plaintiffs specifically argued that USCIS must evaluate the  petition under the preponderance of the evidence standard. The response emphasizes that the petitioner is only required to show that it is "more likely than not" that the marriage is bona fide. It argues that USCIS must evaluate the totality of the record rather than isolating individual documents or using fragmented analysis.

79.    Citing precedents such as *Matter of Laureano*, the response argues that the governing legal test is whether the parties intended to establish a life together at the inception of the marriage. It asserts that post-marital administrative adjustments or practical life choices (such as work-related separation) do not negate the original intent to enter into a bona fide marriage.

80.    Plaintiffs argued that USCIS must evaluate the record as a whole.

81.    Plaintiffs further argued that innocent inconsistencies do not establish marriage fraud. The response systematically categorizes the "concerns" raised in the NOID as clerical or administrative oversights rather than evidence of fraud.

82.    The response argues that when the evidence is viewed collectively—including the documentary evidence of joint finances, property, and residence alongside the firsthand witness declarations—the record overwhelmingly satisfies the burden of proof required to establish a bona fide marriage.

83.    Plaintiffs therefore requested approval of the petition based upon the totality of the evidence.

**K. USCIS Denied the Petition**

COMPLAINT -- 16

84.    On July 16, 2026, USCIS issued a decision denying the Form I-130 petition. See **Exhibit H:** I-130 Denial Notice.

85.    While acknowledging the receipt of Plaintiffs' extensive NOID response, USCIS concluded that Plaintiffs failed to establish by a preponderance of the evidence that the marriage was entered into in good faith and not for the purpose of evading U.S. immigration laws.

86.    USCIS's denial rested upon several primary findings, including:

a. Alleged inconsistencies regarding Plaintiffs' residential history, specifically citing the claims regarding residences in Sherwood, Reedsport, California, and Oklahoma;

b. Perceived deficiencies in financial commingling, with the agency characterizing the joint bank accounts as showing "minimal activity" and lacking evidence of regular payroll deposits;

c. Concerns regarding the completeness and veracity of residential lease documentation, citing handwritten edits and alleged signature inconsistencies; and

d. A general finding that Plaintiffs lacked sufficient joint documentation (such as joint tax filings or joint utility records) to prove a shared life.

87.    USCIS explicitly discounted the independent witness declarations provided by Plaintiffs, characterizing the statements as "template-based" and lacking in unique insight. The agency further cited the absence of government-issued identification attached to these declarations as a basis for diminishing their evidentiary value. USCIS ignored the four letters which were originally submitted with the I-130 petition, all of which were either handwritten or personally placed on the declarant's personal letterhead by the declarant.

COMPLAINT -- 17

88.     Ultimately, USCIS concluded that the record contained too many inconsistencies and omissions regarding Plaintiffs' residential, employment, and marital history to overcome the agency's doubts, characterizing the provided documentary evidence as insufficient to meet the burden of proof.

89.     The denial discounted numerous categories of corroborative evidence, including witness declarations, financial records, leases, utility evidence, photographs, and Plaintiffs' sworn explanations.

**L. USCIS Subsequently Denied Adjustment of Status**

90.     Five days later, on July 21, 2026, USCIS denied Plaintiff Liu's Form I-485. See **Exhibit I:** I-485 Denial Notice.

91.     USCIS expressly stated that the denial resulted solely from the denial of the underlying Form I-130 and the resulting lack of an immediately available immigrant visa.

92.     USCIS conducted no independent analysis of Plaintiff Liu's eligibility beyond the consequences of the I-130 denial.

93.     USCIS further advised Plaintiff Liu that she was no longer authorized to remain in the United States, warned that she could be placed in removal proceedings if she did not depart within 33 days, and terminated her employment authorization and advance parole that had been granted during the pendency of her adjustment application.

## V. LEGAL FRAMEWORK

**A. Immediate Relative Classification Under the Immigration and Nationality Act**

94.     Congress has long recognized the importance of preserving family unity through the immigration laws. To further that objective, the Immigration and Nationality Act ("INA")

COMPLAINT -- 18

authorizes United States citizens to petition for the classification of their spouses as "immediate relatives." See 8 U.S.C. §§ 1151(b)(2)(A)(i), 1154(a)(1)(A)(i).

95.    Unlike other family-sponsored immigrants subject to annual numerical limitations, immediate relatives of United States citizens are exempt from worldwide numerical quotas. 8 U.S.C. § 1151(b)(2)(A)(i).

96.    Congress thereby expressed a strong policy favoring the reunification and preservation of families through the  immediate-relative immigration process.

97.    Once USCIS determines that a qualifying marital relationship exists and that the marriage was entered into in good faith, the citizen spouse's petition should be approved unless another statutory ground for denial applies.

98.    Congress expressly exempted immediate relatives of United States citizens from the adjustment bars applicable to applicants who have overstayed their authorized period of admission or otherwise failed to maintain lawful status. Specifically, INA § 245(c)(2), 8 U.S.C. § 1255(c)(2), bars adjustment for many applicants who have failed to maintain continuously lawful status or engaged in unauthorized employment, but expressly exempts immediate relatives described in INA § 201(b) from those statutory bars. Accordingly, Congress made a deliberate policy choice that a visa overstay or failure to maintain lawful status does not render the spouse of a United States citizen ineligible to adjust status, provided the applicant otherwise satisfies the statutory requirements for adjustment.

**B. Governing Legal Standard for Determining Whether a Marriage Is Bona Fide**

99.    The central issue in a marriage-based Form I-130 petition is whether the parties entered into the marriage in good faith and intended, at the time of the marriage, to establish a life together as husband and wife.

COMPLAINT -- 19

100.    The Ninth Circuit has consistently held that the controlling inquiry is the parties' intent at the inception of the marriage, not whether the marriage ultimately succeeded or resembled a stereotypical marriage.

101.    In *Bark v. INS*, 511 F.2d 1200 (9th Cir. 1975), the Ninth Circuit explained that the relevant inquiry is whether the bride and groom intended to establish a life together when they married. "Aliens cannot be required to have more conventional or more successful marriages than citizens." *Id* at 1201-02.

102.    The court further recognized that subsequent marital difficulties, periods of separation, financial arrangements, or changes in the relationship do not necessarily establish that a marriage was fraudulent when entered. *Damon v. Ashcroft*, 360 F.3d 1084 (9th Cir. 2004).

103.    The Board of Immigration Appeals adopted the same legal standard in *Matter of Laureano,* 19 I. & N. Dec. 1 (BIA 1983), holding that the central question is whether the parties intended to establish a life together at the time of marriage.

104.    Under *Matter of Laureano*, evidence acquired after the marriage—including joint residence, commingling of finances, insurance policies, jointly owned property, photographs, correspondence, and testimony of family members and friends—is relevant because it sheds light on the parties' intent when they married.

105.    Likewise, in *Damon v. Ashcroft*, 360 F.3d 1084 (9th Cir. 2004), the Ninth Circuit reaffirmed that the existence of marital difficulties or inconsistencies after marriage does not negate an otherwise bona fide marriage entered into with the intent to establish a life together.

106.    Accordingly, USCIS may not deny a petition merely because the parties' marriage differs from what an adjudicating officer subjectively believes to be a "typical marriage".

**C. USCIS Must Apply the Preponderance of the Evidence Standard**

COMPLAINT -- 20

107.    Generally, USCIS adjudicates immigration benefit requests under the preponderance of the evidence standard unless Congress or the regulations require a higher burden. *Matter of Chawathe*, 25 I. & N. Dec. 369 (AAO 2010).Under *Matter of Chawathe,* an applicant satisfies the burden of proof by demonstrating that the claimed fact is more likely than not true.

108.    The preponderance standard does not require certainty. Nor does it require the elimination of every possible inconsistency or suspicion. Rather, USCIS must determine whether, considering the record as a whole, the evidence demonstrates that the petitioner's claim is probably true.  Even if the director has some doubt as to the truth, if the petitioner submits relevant, probative, and credible evidence that leads the director to believe that the claim is "more likely than not" or "probably" true, the applicant has satisfied the standard of proof. *Matter of E-M-*, 20 I&N Dec. 77, 79-80 (Comm'r 1989).

109.    The USCIS Policy Manual likewise instructs officers that immigration benefits should be adjudicated under the preponderance-of-the-evidence standard unless a different burden is prescribed by law.

110.    Accordingly, USCIS may not impose another evidentiary burden when adjudicating a Form I-130 petition.

**D. USCIS May Not Disregard Abundant Evidence of a Bona Fide Marriage in Favor of Irrational Inferences from Isolated Facts**

111.    In *Berrios v. Holder*, 502 F. App'x 100 (2d Cir. 2012) (summary order), the Second Circuit applied the APA's arbitrary-and-capricious standard to a USCIS denial of a Form I-130 marriage petition. See **Exhibit J:** *Berrios v. Holder*, 502 F. App'x 100 (2d Cir. 2012) (summary order). Although *Berrios* is an unpublished, nonbinding Second Circuit decision, its

COMPLAINT -- 21

reasoning is highly persuasive because it applies the same APA standard to materially similar agency action.

112.    The petitioner in *Berrios* submitted substantial evidence that her marriage was bona fide, including affidavits from friends, joint utility bills, joint bank-account statements, joint federal and state tax returns, medical-insurance records, photographs, a residential lease, and other evidence of the couple's shared life. The court observed that the petitioner had submitted every category of evidence that the Board of Immigration Appeals had identified as relevant in *Matter of Laureano*, 19 I. & N. Dec. 1 (BIA 1983). *Berrios*, 502 F. App'x at 101–02.

113.    USCIS nevertheless denied the petition based on several perceived concerns, including the beneficiary's use of other addresses, the timing of some documentary evidence, and his presence at his former wife's residence when USCIS officers arrived there on one morning. The Second Circuit held that none of those reasons, separately or collectively, rationally supported USCIS's conclusion. Id. at 102–03.

114.    The court specifically rejected USCIS's reliance on the beneficiary's presence at his former wife's home as proof that he did not reside with the petitioner. That isolated fact did not rationally support USCIS's inference when weighed against abundant evidence of cohabitation and the plausible reasons that a father might be present at the home where his minor child resided. *Id*. at 103.

115.    The court also faulted USCIS for failing to account for substantial favorable evidence predating the filing of the petition, including joint bank statements, utility bills, and tax returns. Those documents were precisely the types of evidence USCIS and the BIA identified as probative of a bona fide marriage, yet USCIS failed to explain why that evidence was inadequate. *Id*. at 102.

COMPLAINT -- 22

116.    *Berrios* further recognized that evidence of the couple's conduct after marriage remains relevant to determining their intent at the time of marriage. Relying in part on the Ninth Circuit's decision in *Bark v. INS*, 511 F.2d 1200, 1201–02 (9th Cir. 1975), the court rejected the proposition that later-created evidence could simply be dismissed as irrelevant to the parties' original marital intent. *Berrios*, 502 F. App'x at 102.

117.    The court reasoned:

"Just as "[a]liens cannot be required to have more conventional or more successful mar- riages than citizens," Bark v. INS, 511 F.2d 1200, 1201-02 (9th Cir. 1975), they cannot be required to have a certain level of financial sophistication giving rise to extensive pa- per trails. The type of pre-petition evidence we would expect a bona fide married couple to be able to easily acquire from several years ago—tax returns and bank account state- ments—is precisely what the agency requested and Berrios provided." *Id*.

118.    The Second Circuit concluded that USCIS had failed to provide an adequately reasoned basis for finding that the petitioners had not established a bona fide marriage by a preponderance of the evidence. The court therefore held the agency action arbitrary and capricious, reversed the district court, and remanded with directions to enter judgment for the plaintiffs. *Id*. at 103.

119.    Specifically, the court noted that Berrios provided compelling, substantial proof encompassing every category of evidence deemed relevant by the Board of Immigration Appeals (BIA) to show a marriage was bona fide at inception. This included joint tax returns, joint bank account statements, joint utility bills, insurance policies naming the spouse as a beneficiary, a joint residential lease, a mortgage pre-approval, business loan co-signing, and affidavits/letters from friends and family.

120.    The court rejected USCIS's dismissal of documentation acquired after the 2008 petition filing. USCIS originally discounted Berrios's documentation because much of it was

COMPLAINT -- 23

acquired after the 2008 petition filing. The court rejected this, pointing out that USCIS ignored significant pre-petition evidence (like tax returns and bank statements). Furthermore, the court emphasized the legal principle that recent behavior is relevant to a couple's intent at the inception of the marriage.

121.    The court further held that USCIS abused its discretion by relying on the beneficiary's use of an alias and prior arrests. USCIS heavily weighted the fact that the beneficiary had been arrested twice, used an alias, and had driver's licenses with other addresses. The court ruled that the agency abused its discretion because a beneficiary's good character is irrelevant to whether a marriage is a sham. Additionally, since Jofre was an undocumented resident, it was rational that he might hide his true identity from police, and it was the U.S. citizen petitioner's (Berrios) credibility that was primarily at issue. The court reasoned that a beneficiary's character is not determinative of whether a marriage is fraudulent, and that an undocumented individual's attempt to obscure his identity from law enforcement did not undermine the U.S. citizen petitioner's credibility or the bona fide nature of the marriage.

122.    Finally, the court found irrational USCIS's reliance on a single site visit where the beneficiary was discovered at his ex-wife's residence. USCIS relied on a single site visit where agents found the beneficiary at the home of his ex-wife at 9 a.m.. The court concluded that this isolated event did not rationally support the inference that the couple did not cohabit, particularly when weighed against the abundant evidence of their shared life and the plausible explanation that the beneficiary was visiting his minor child.

123.    The same defects are present here. USCIS identified a series of facially neutral or readily explainable facts—including employment away from Oregon, use of mailing addresses,

COMPLAINT -- 24

handwritten corrections to a lease, the amount or nature of joint-account activity, and similarities in the format of witness declarations—and assigned those facts an adverse meaning.

124.    USCIS did not identify substantial affirmative evidence that Plaintiffs entered their marriage to evade the immigration laws. Nor did it adequately explain why its adverse inferences outweighed the extensive evidence of Plaintiffs' shared residence, financial relationship, insurance, jointly titled property, tax filings, photographs, personal declarations, and independent eyewitness testimony.

125.    As in *Berrios*, USCIS could not lawfully elevate isolated circumstances over the administrative record as a whole without explaining why the circumstances rationally established a fraudulent intent at the inception of the marriage.

**E. USCIS Must Consider the Totality of the Evidence**

126.    The preponderance-of-the-evidence standard requires USCIS to evaluate the administrative record in its entirety rather than examining individual pieces of evidence in isolation.

127.    In *Matter of Chawathe*, the Administrative Appeals Office explained that USCIS must evaluate the quality, credibility, and relevance of all evidence presented before determining whether the burden of proof has been met.

128.    Likewise, *Matter of Laureano* instructs adjudicators to consider all relevant evidence bearing upon the parties' intent at the inception of the marriage.

129.    The Ninth Circuit similarly recognizes that bona fide marriages are established through the totality of the evidence rather than by any single document or category of proof.

130.    Accordingly, USCIS may not reject a petition simply because individual items of evidence, viewed in isolation, are not independently dispositive.

**F. The Administrative Procedure Act Requires Reasoned Decision-Making**

131.     Judicial review of USCIS's final decisions is governed by the Administrative Procedure Act.

132.     Under 5 U.S.C. § 706(2)(A), a reviewing court shall hold unlawful and set aside agency action that is: arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

133.     The Supreme Court has repeatedly held that an agency must examine all relevant evidence, articulate a satisfactory explanation for its decision, and establish a rational connection between the facts found and the conclusions reached.

134.     In *Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.,* 463 U.S. 29 (1983), the Supreme Court explained that agency action is arbitrary and capricious where the agency: relied upon factors Congress did not intend it to consider; entirely failed to consider an important aspect of the problem; offered explanations contrary to the evidence before it; or reached conclusions that cannot reasonably be explained.

135.     The APA further requires agencies to treat similar evidence consistently, follow their own governing regulations and published policies, and meaningfully address significant contrary evidence contained within the administrative record.

136.     An agency may not substitute speculation for evidence or disregard material evidence without a reasoned explanation.

**G. USCIS Must Follow Its Own Regulations and Published Policies**

137.     Federal agencies are obligated to follow the statutes enacted by Congress, the regulations they promulgate, and their own published policies governing adjudications.

COMPLAINT -- 26

138.    When an agency departs from its own established legal standards without acknowledging or reasonably explaining that departure, its action is arbitrary and capricious within the meaning of the Administrative Procedure Act.

139.    USCIS has published detailed guidance governing the adjudication of family-based petitions, including the evidentiary standards applicable to Form I-130 petitions.

140.    As discussed in the following section, those published standards expressly recognize that immigration benefit proceedings are not governed by strict judicial rules of evidence and require USCIS officers to consider a broad range of reliable documentary and testimonial evidence.

141.    Plaintiffs allege that USCIS departed from these governing standards by imposing evidentiary requirements not found in the INA, the regulations, or the USCIS Policy Manual, by disregarding competent corroborative evidence without adequate explanation, and by failing to evaluate the administrative record under the proper legal framework.

**H. Scope of Judicial Review Under the Administrative Procedure Act**

142.    Judicial review of USCIS's denial of Plaintiffs' Form I-130  Petition for Alien Relative and the derivative denial of Plaintiff Beneficiary's Form I-485 Application to Register Permanent Residence or Adjust Status is governed by the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706.

143.    Under the APA, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be":

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (B) contrary to constitutional right, power, privilege, or immunity;

COMPLAINT -- 27

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in cases subject to 5 U.S.C. §§ 556 and 557; or

(F) unwarranted by the facts to the extent authorized by law. See 5 U.S.C. § 706.

144.    This action principally arises under 5 U.S.C. § 706(2)(A) because Plaintiffs contend that USCIS acted arbitrarily, capriciously, abused its discretion, and otherwise    acted contrary to law. Plaintiffs also contend that USCIS failed to observe procedures required by law within the meaning of 5 U.S.C. § 706(2)(D) by departing from its own governing  regulations and published evidentiary policies.

145.    The Supreme Court has repeatedly explained that the APA  requires agencies to engage in reasoned decision-making. Agency action is arbitrary and capricious if the agency: relied upon factors Congress did not intend it to consider; entirely failed to consider an important aspect of the problem; offered an explanation that runs counter to the evidence before the agency; or reached a conclusion that is so implausible that it cannot be attributed to a difference in view or the product of agency expertise. *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.,* 463 U.S. 29, 43 (1983).

146.    The APA further requires an agency to examine the relevant evidence, consider the administrative record as a whole, meaningfully address significant contrary evidence, articulate a satisfactory explanation for its decision, and demonstrate a rational connection between the facts found and the conclusions reached.

COMPLAINT -- 28

147.    While judicial review under the APA is deferential, deference is not abdication. An agency must comply with the statutes enacted by Congress, the regulations it has promulgated, and its own published policies. Courts do not defer to agency decisions that rest upon legal error, irrational reasoning, speculation, or unexplained departures from governing law.

148.    Plaintiffs do not ask this Court to substitute its judgment for that of USCIS on matters committed to  the agency's discretion. Nor do Plaintiffs ask the Court to make an independent factual determination regarding the bona fides of their marriage.

149.    Rather, Plaintiffs ask this Court to determine whether USCIS:

> a. applied the correct legal standard governing bona fide marriages;
>
> b. applied the proper preponderance-of-the-evidence burden of proof;
>
> c. considered the administrative record as a whole;
>
> d. meaningfully evaluated Plaintiffs' evidence and explanations;
>
> e. followed its own regulations and published policies;
>
> f. refrained from imposing evidentiary requirements found nowhere in the INA, the regulations, or the USCIS Policy Manual;
>
> g. articulated a rational explanation supported by the administrative record; and
>
> h. reached a decision that was not arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.

150.    These are classic questions of administrative law that fall squarely within this Court's authority under the Administrative Procedure Act.

151.    If the Court concludes that USCIS failed to comply with these legal requirements, the appropriate remedy is to vacate the challenged decisions and remand the matter to the agency for reconsideration under the proper legal standards. See 5  U.S.C. § 706(2).

COMPLAINT -- 29

152.    The evidentiary principles governing USCIS's evaluation of immigration benefit requests—which form the basis of several of Plaintiffs' claims for relief—are discussed in the previous section.

## VI. CLAIMS FOR RELIEF

153.    Each of the following claims identifies an independent legal defect in the agency's decision-making process. These claims are not repetitive or duplicative; rather, each addresses a distinct and separate violation of the Administrative Procedure Act, ranging from the application of the wrong legal standard and the failure to consider the record as a whole, to the improper reliance on speculation, irrational inferences, and extra-regulatory evidentiary requirements. This underscores the systematic nature of the legal errors committed by the agency, rather than a mere disagreement regarding the weight of evidence.

## COUNT ONE

**USCIS Applied the Wrong Legal Standard in Determining Whether Plaintiffs' Marriage Was Bona Fide**

**(Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A))**

154.    Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth here.

155.    The Immigration and Nationality Act authorizes United States citizens to petition for classification of their spouses as immediate relatives. The central inquiry governing such petitions is whether the parties entered into the marriage in good faith with the intent to establish a life together as husband and wife at the time of the marriage.

156.    The Ninth Circuit has long held that the proper inquiry is the parties' intent when they married—not whether the marriage later encountered difficulties or whether it conforms to an adjudicator's subjective expectations concerning the characteristics of a "typical" marriage. *Bark v. INS,* 511 F.2d 1200 (9th Cir. 1975).

COMPLAINT -- 30

157.    Likewise, the Board of Immigration Appeals has held that the central issue in a marriage-based petition is whether the parties intended to establish a life together when they entered the marriage. *Matter of Laureano*, 19 I. & N. Dec. 1 (BIA 1983).

158.    Evidence generated after the marriage—including joint residences, financial records, insurance, photographs, tax returns, travel, correspondence, and declarations from family members and   friends—is relevant only because it tends to illuminate the  parties' intent at the inception of the marriage.

159.    USCIS nevertheless departed from these governing legal standards.

160.    Rather than determining whether Plaintiffs intended to establish a life together when they married, USCIS repeatedly evaluated whether Plaintiffs' marriage resembled what the adjudicating officer considered to be a conventional or expected marital relationship.

161.    The denial repeatedly emphasized perceived deficiencies in Plaintiffs' financial practices, living arrangements, banking activity, employment history, mailing addresses, utility records, and other post-marriage circumstances without explaining why those circumstances demonstrated that Plaintiffs lacked the requisite intent at the time of marriage.

162.    USCIS also relied upon subjective assumptions regarding how married couples ordinarily conduct their financial affairs, reside together, maintain bank accounts, and document their relationships.

163.    Neither the INA nor the governing regulations establish a model or stereotype of married life against which petitioners must measure.

164.    Married couples differ widely in their financial arrangements, employment obligations, living patterns, and methods of organizing their personal affairs.

COMPLAINT -- 31

165.    The governing legal question is not whether Plaintiffs' marriage conformed to USCIS's expectations, but whether Plaintiffs intended, at the time they married, to establish a life together.

166.    Plaintiffs submitted substantial documentary and testimonial evidence demonstrating precisely that intent, including joint   financial records, insurance, vehicle ownership, residential documentation, photographs, tax returns, and sworn declarations from both Plaintiffs and multiple independent witnesses. USCIS  acknowledged receiving those materials.

167.    Instead of evaluating that evidence under the standards articulated in *Bark* and *Matter of Laureano*, USCIS repeatedly substituted subjective expectations regarding what it believed a genuine marriage should look like.

168.    By applying an incorrect legal standard to the adjudication  of Plaintiffs' Form I-130 petition, USCIS acted arbitrarily, capriciously, abused its discretion, and otherwise acted not in accordance with law, in violation of 5 U.S.C. § 706(2)(A).

### COUNT TWO

**USCIS Failed to Consider the Administrative Record as a Whole**

**(Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A))**

169.    Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth here.

170.    USCIS was required to evaluate the entire administrative record under the preponderance-of-the-evidence standard.

COMPLAINT -- 32

171.    The USCIS Policy Manual and *Matter of Chawathe* require officers to determine eligibility by considering all relevant evidence collectively rather than requiring any single document to prove eligibility.

172.    Likewise, *Matter of Laureano* instructs adjudicators to evaluate the totality of the evidence bearing upon the parties' intent when they entered the marriage.

173.    Plaintiffs submitted extensive documentary evidence over the course of the adjudication, including evidence accompanying the  original petition, evidence presented during the interview, and a comprehensive response to the Notice of Intent to Deny.

174.    That evidence included, among other things,

a. joint bank accounts;

b. joint automobile title;

c. automobile insurance;

d. renters insurance;

e. federal income tax returns;

f. residential lease agreements;

g. amended lease documents;

h. utility records;

i. cancelled checks;

j. photographs documenting the marriage over time;

k. sworn declarations from both Plaintiffs; and

l. declarations from multiple third-party witnesses possessing firsthand knowledge of Plaintiffs' marriage.

COMPLAINT -- 33

175. Rather than evaluating the cumulative force of this evidence, USCIS repeatedly evaluated individual pieces of evidence in isolation.

176. For example, USCIS discounted joint banking records because the agency believed account activity was insufficient, discounted utility documentation because it considered the documentation limited, questioned lease documentation independently of other corroborative evidence, and separately discounted witness declarations based upon formatting and the absence of attached identification.

177. At no point did USCIS explain why the combined weight of Plaintiffs' financial records, residential documentation, insurance records, tax filings, jointly titled property, photographs, sworn declarations, and third-party eyewitness testimony failed to establish that Plaintiffs more likely than not entered into their marriage in good faith.

178. Instead, the denial reflects an analytical approach in which each category of evidence was discounted individually without evaluating its corroborative effect when viewed together with the remainder of the administrative record.

179. Such a fragmented analysis is incompatible with the preponderance-of-the-evidence standard, which requires evaluation of the record as a whole.

180. Numerous items of evidence corroborated one another. Joint financial documents corroborated joint residence. Lease documents corroborated utility records. Tax filings corroborated financial records. Independent witness declarations corroborated Plaintiffs' sworn testimony. Photographs corroborated the continuing nature of the relationship.

181. USCIS's failure to evaluate these mutually reinforcing categories of evidence collectively resulted in an arbitrary assessment of the administrative record.

COMPLAINT -- 34

182. By failing to evaluate the administrative record as a whole, USCIS acted arbitrarily, capriciously, abused its discretion, and otherwise acted not in accordance with law in violation of the Administrative Procedure Act.

## COUNT THREE

**USCIS Failed to Meaningfully Address Plaintiffs' Comprehensive Response to the Notice of Intent to Deny**

**(Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A))**

183. Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth here.

184. Due process and fundamental principles of reasoned administrative decision-making require an agency issuing a Notice of Intent to Deny to meaningfully consider the applicant's response before rendering a final decision.

185. The purpose of a Notice of Intent to Deny is not merely procedural formality. It exists to provide the applicant with a meaningful opportunity to explain perceived discrepancies, submit additional evidence, and correct factual misunderstandings before the agency reaches a final decision.

186. Plaintiffs accepted that invitation and submitted a comprehensive response.

187. USCIS expressly acknowledged receipt of Plaintiffs' July 6, 2026 response.

188. Plaintiffs' response addressed every significant issue identified in the NOID.

189. Plaintiffs corrected forms where necessary.

190. Plaintiffs submitted additional documentary evidence.

191. Plaintiffs submitted detailed sworn declarations explaining perceived inconsistencies.

COMPLAINT -- 35

192.    Plaintiffs produced objective documentary evidence corroborating those explanations.

193.    Plaintiffs further cited controlling legal authorities governing the adjudication of marriage-based petitions, including the proper preponderance-of-the-evidence standard.

194.    The additional materials included revised Forms I-130 and  I-130A, complete lease documentation, joint bank records, jointly titled vehicle documentation, insurance records, utility  verification, tax returns, cancelled checks, birth records, divorce documentation, sworn declarations of both Plaintiffs, and declarations from multiple independent witnesses.

195.    Despite acknowledging receipt of these submissions, USCIS failed to meaningfully evaluate many of Plaintiffs' explanations.

196.    Instead, the denial frequently repeated the same concerns identified in the NOID without explaining why Plaintiffs' detailed factual explanations and corroborating documentary evidence were inadequate.

197.    The denial similarly failed to identify which portions of Plaintiffs' sworn declarations USCIS accepted, which portions it rejected, and the evidentiary basis for rejecting those explanations.

198.    Nor did USCIS explain why corroborating documentary evidence submitted specifically to resolve the NOID concerns failed to satisfy the agency's concerns.

199.    An agency may not simply acknowledge receipt of contrary evidence while failing to engage with its substance.

200.    Reasoned administrative decision-making requires the agency to address material evidence that directly responds to the agency's stated concerns and to provide a rational explanation when rejecting that evidence.

COMPLAINT -- 36

201.    USCIS's failure to meaningfully evaluate Plaintiffs' comprehensive NOID response deprived Plaintiffs of the meaningful opportunity to respond contemplated by the governing regulations and rendered the agency's decision arbitrary and capricious.

202.    By failing to meaningfully consider and respond to Plaintiffs' NOID submission, USCIS acted arbitrarily, capriciously, abused its discretion, and otherwise acted not in accordance with law in violation of 5 U.S.C. § 706(2)(A).

## COUNT FOUR

### USCIS Relied Upon Speculation Rather Than Evidence

### (Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A))

203.    Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth here.

204.    USCIS adjudications must be based upon evidence contained in the administrative record rather than conjecture, suspicion, or speculation.

205.    The Administrative Procedure Act requires agencies to base their decisions upon the evidence before them and to articulate a rational explanation supported by the record.

206.    Throughout the challenged decision, USCIS repeatedly relied upon speculation concerning Plaintiffs' marriage rather than affirmative evidence demonstrating marriage fraud.

207.    USCIS inferred adverse conclusions from circumstances that were equally, if not more, consistent with innocent explanations provided by Plaintiffs.

208.    For example, USCIS questioned Plaintiffs' living arrangements, employment history, financial practices, mailing addresses, utility documentation, banking activity, and witness declarations without identifying affirmative evidence demonstrating that Plaintiffs entered their marriage for the purpose of evading the immigration laws.

COMPLAINT -- 37

209.    The agency repeatedly stated that various circumstances "raised concerns," "called into question," or "appeared inconsistent," yet failed to identify evidence establishing that the marriage itself was fraudulent.

210.    Mere suspicion is not evidence.

211.    Administrative agencies may draw reasonable inferences from established facts, but they may not substitute speculation for proof or deny statutory benefits based upon unsupported assumptions.

212.    Plaintiffs submitted sworn declarations explaining each circumstance that USCIS considered unusual and produced documentary evidence corroborating those explanations. USCIS acknowledged receipt of those materials.

213.    Rather than identifying affirmative evidence contradicting Plaintiffs' explanations, USCIS simply found the explanations unpersuasive without explaining why they lacked credibility or were inconsistent with the record.

214.    By relying upon suspicion, conjecture, and speculative reasoning rather than affirmative evidence, USCIS acted arbitrarily, capriciously, abused its discretion, and otherwise acted not in accordance with law in violation of 5 U.S.C. § 706(2)(A).

<u>COUNT FIVE</u>

**USCIS Drew Irrational Inferences From Innocent Facts**

**(Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A))**

215.    Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth here.

216.    Agencies may draw reasonable inferences from facts supported by the administrative record.

COMPLAINT -- 38

217. However, an inference becomes arbitrary when the same facts are equally or more consistent with innocent conduct and the agency fails to explain why the adverse inference is more persuasive.

218. Throughout the denial, USCIS repeatedly transformed ordinary life circumstances into evidence of marriage fraud.

219. The agency drew adverse inferences from:

a. temporary employment in Oklahoma;

b. use of a California mailing address;

c. Plaintiffs' employment schedules;

d. lease documentation;

e. modest banking activity;

f. utility documentation;

g. tax records;

h. vehicle ownership; and

i. the format of third-party declarations.

220. Each of these facts was explained by Plaintiffs through sworn declarations and corroborated by documentary evidence submitted in response to the NOID.

221. None of these facts, individually or collectively, constitutes evidence that Plaintiffs entered into their marriage with fraudulent intent.

222. Instead, each reflects ordinary decisions made by married couples confronting employment obligations, financial realities, mailing concerns, or document preparation.

COMPLAINT -- 39

223.    USCIS nevertheless treated these innocent circumstances as evidence of fraud without identifying any logical connection between those circumstances and Plaintiffs' intent at the inception of the marriage.

224.    Such reasoning is inconsistent with *Bark v. INS*, which recognizes that post-marital circumstances do not determine whether the parties intended to establish a life together when they married.

225.    The denial likewise fails to explain why Plaintiffs' innocent explanations were less persuasive than USCIS's speculative interpretations.

226.    An agency acts arbitrarily when it draws adverse inferences unsupported by the record and fails to explain why competing, record-supported explanations were rejected.

227.    By drawing irrational inferences from innocent facts, USCIS acted arbitrarily, capriciously, abused its discretion, and otherwise acted not in accordance with law.

## COUNT SIX

### USCIS Ignored Material Favorable Evidence

### (Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A))

228.    Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth here.

229.    The APA requires agencies to consider both favorable and unfavorable evidence contained within the administrative record.

230.    An agency may not selectively discuss evidence supporting denial while disregarding material evidence supporting approval.

231.    Plaintiffs submitted extensive objective documentary evidence corroborating the bona fide nature of their marriage.

COMPLAINT -- 40

232.    That evidence included:

a. joint financial accounts;

b. jointly titled vehicle documentation;

c. insurance records;

d. tax returns;

e. lease agreements;

f. amended lease documentation;

g. utility records;

h. cancelled checks;

i. Photographs;

j. sworn declarations of both Plaintiffs; and

k. declarations from multiple independent eyewitnesses.

233.    Much of this evidence directly addressed the concerns identified in the NOID.

234.    USCIS acknowledged receipt of these materials but failed to explain why their cumulative corroborative value was insufficient.

235.    Instead, the denial largely focused upon perceived deficiencies while giving little or no meaningful consideration to evidence supporting approval.

236.    The agency's discussion reflects a selective review of the administrative record rather than the balanced evaluation required by the APA.

237.    By failing to meaningfully evaluate material favorable evidence, USCIS acted arbitrarily, capriciously, abused its discretion, and otherwise acted not in accordance with law.

## COUNT SEVEN

### USCIS Improperly Discounted Competent Eyewitness Declarations

COMPLAINT -- 41

**(Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A))**

238.    Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth here.

239.    Plaintiffs submitted declarations from multiple third-party witnesses possessing firsthand knowledge of their marriage, including: Kurt Hamen, a friend of Plaintiff Bochner for over 30 years who observed the couple as a committed, genuine, and stable couple during home visits and outdoor outings; Gabriel Orenstein, a cousin who observed the couple's warm and welcoming home, mutual support, and affection during shared meals and visits; Kent Hickam, an attorney who has known the couple since 2018 and witnessed their genuine, loving relationship during social settings like holidays and fishing trips, noting Paul's kindness and respect for Zhiying; John Robert King, a long-time acquaintance who witnessed their growing bond and mutual support through challenges during shared activities, noting Paul's patience and attention to Zhiying; and Dr. David Allen, a cousin who observed the couple during visits in 2021, 2023, and 2024, describing them as a supportive, affectionate couple who complement each other well. USCIS acknowledged receipt of those declarations.

240.    Each witness declared, under penalty of perjury, facts based upon personal observation rather than speculation or hearsay.

241.    Third-party declarations from persons possessing personal knowledge constitute expressly recognized evidence of a bona fide marriage under 8 C.F.R. § 204.2(a)(1)(i)(B).

242.    Longstanding administrative precedent likewise recognizes affidavits from witnesses with personal knowledge as competent corroborative evidence. *Matter of E-M-*, 20 I. & N. Dec. 77 (Comm'r 1989).

COMPLAINT -- 42

243.    Rather than evaluating the substance of these eyewitness observations, USCIS discounted the declarations based primarily upon their formatting and the absence of attached identification  documents.

244.    USCIS did not find that any witness lacked personal knowledge.

245.    USCIS did not find that any witness lacked credibility.

246.    USCIS did not identify any contradiction among the witnesses.

247.    USCIS did not identify any false statement contained within the declarations.

248.    Instead, USCIS effectively disregarded material eyewitness testimony without evaluating the witnesses' actual observations.

249.    Such treatment conflicts with 8 C.F.R. § 204.2(a)(1)(i)(B), *Matter of E-M-*, and fundamental principles governing the evaluation of corroborative evidence.

250.    By improperly discounting competent eyewitness testimony, USCIS acted arbitrarily, capriciously, abused its discretion, and otherwise acted not in accordance with law.

## COUNT EIGHT

### USCIS Imposed Extra-Regulatory Evidentiary Requirements

### (Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A))

251.    Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth here.

252.    Neither the INA nor the implementing regulations require declarants supporting a Form I-130 petition to attach government-issued identification to their sworn declarations.

253.    Nor do the regulations require witness declarations to be individually formatted, independently drafted, or stylistically unique.

COMPLAINT -- 43

254.    USCIS nevertheless discounted Plaintiffs' declarations because they shared similar formatting and lacked attached identification documents.

255.    In doing so, USCIS imposed evidentiary requirements found nowhere in:

a. the Immigration and Nationality Act;

b. 8 C.F.R. § 204.2;

c. the USCIS Policy Manual;

d. *Matter of E-M-*; or

e. 28 U.S.C. § 1746.

256.    To the contrary, the USCIS Policy Manual expressly states that strict rules of evidence do not apply in immigration benefit adjudications and that officers may consider a wide range of oral and documentary evidence. USCIS Policy Manual, Vol. 1, Part E, Ch. 6(D) (Types of Evidence).

257.    Congress likewise recognized in 28 U.S.C. § 1746 that declarations executed under penalty of perjury possess the same force and effect as sworn affidavits without imposing any identification requirement.

258.    By inventing evidentiary requirements unsupported by statute, regulation, precedent, or agency policy, USCIS exceeded its lawful authority and improperly elevated Plaintiffs' burden of proof.

259.    USCIS therefore acted arbitrarily, capriciously, abused its discretion, and otherwise acted not in accordance with law.

**COUNT NINE**

**USCIS Failed to Articulate a Rational Connection Between the Evidence and Its Decision**

**(Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A))**

COMPLAINT -- 44

260.    Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth here.

261.    The APA requires an agency to articulate a satisfactory explanation connecting the evidence contained in the administrative record with the conclusions reached.

262.    In *Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43 (1983), the Supreme Court held that agency action is arbitrary and capricious where the agency fails to articulate a rational connection between the facts found and the decision made.

263.    Although USCIS summarized portions of Plaintiffs' evidence, it frequently failed to explain why that evidence did not satisfy the governing preponderance-of-the-evidence standard.

264.    The denial repeatedly concludes that certain evidence was insufficient without explaining why corroborating evidence submitted by Plaintiffs failed to resolve the agency's concerns.

265.    USCIS likewise failed to explain why Plaintiffs' sworn declarations, third-party declarations, joint financial documentation, lease records, tax filings, insurance records, vehicle ownership, and photographs—considered together—did not establish a bona fide marriage.

266.    The agency never identified a coherent analytical framework connecting its factual observations with its ultimate conclusion that Plaintiffs failed to establish eligibility.

267.    Instead, the decision consists largely of isolated criticisms of individual items of evidence followed by the unexplained conclusion that the burden of proof was not met.

268.    Such conclusory reasoning does not satisfy the APA's requirement of reasoned decision-making.

COMPLAINT -- 45

269.    By failing to articulate a rational connection between the evidence contained in the administrative record and the ultimate denial of the petition, USCIS acted arbitrarily, capriciously, abused its discretion, and otherwise acted not in accordance with law in violation of 5 U.S.C. § 706(2)(A).

## COUNT TEN

### USCIS Misapplied the Preponderance of the Evidence Standard

### (Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A))

270.    Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth here.

271.    Unless Congress prescribes a different burden, USCIS adjudicates immigration benefit requests under the preponderance of the evidence standard.

272.    The Administrative Appeals Office explained in *Matter of Chawathe*, 25 I. & N. Dec. 369 (AAO 2010), that an applicant satisfies this burden by demonstrating that the claimed fact is more likely than not true.

273.    Under *Matter of Chawathe*, USCIS must evaluate the quality, relevance, credibility, and probative value of all evidence and determine whether, taken together, the evidence establishes eligibility by a preponderance.

274.    The preponderance standard does not require certainty.

275.    Nor does it require an applicant to eliminate every conceivable inconsistency, suspicion, or unanswered question.

276.    Even if the director has some doubt as to the truth, if the petitioner submits relevant, probative, and credible evidence that leads the director to believe that the claim is

COMPLAINT -- 46

"more likely than not" or "probably" true, the applicant has satisfied the standard of proof. *Matter of E-M-*, 20 I&N Dec. 77, 79-80 (Comm'r 1989).

277.    Plaintiffs submitted substantial documentary and testimonial evidence supporting the bona fide nature of their marriage, including joint financial records, lease agreements, insurance records, tax filings, utility documentation, photographs, sworn declarations, and corroborating third-party testimony. USCIS acknowledged receiving these materials.

278.    Plaintiffs further submitted a comprehensive response to the Notice of Intent to Deny addressing every concern raised by USCIS and supplying additional corroborating evidence.

279.    Rather than determining whether Plaintiffs had shown that it was more likely than not that they entered into their marriage in good faith, USCIS effectively required Plaintiffs to disprove every perceived inconsistency and satisfy every subjective concern expressed by the adjudicating officer.

280.    The denial reflects an evidentiary burden materially higher  than the preponderance standard recognized in *Matter of Chawathe*.

281.    By misapplying the governing burden of proof, USCIS acted arbitrarily, capriciously, abused its discretion, and otherwise acted not in accordance with law in violation of 5 U.S.C. § 706(2)(A).

## COUNT ELEVEN

### USCIS Failed to Engage in Reasoned Decision-Making

### (Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A))

282.    Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth here.

COMPLAINT -- 47

283. The Administrative Procedure Act requires federal agencies to engage in reasoned decision-making.

284. Under *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29 (1983), an agency acts arbitrarily and capriciously when it fails to consider important aspects of the record, offers explanations contrary to the evidence, relies upon impermissible factors, or fails to articulate a satisfactory explanation for its decision.

285. USCIS's decision reflects a pattern of analytical errors rather than reasoned adjudication.

286. Specifically, USCIS:

a. applied an incorrect legal standard governing bona fide marriages;

b. fragmented rather than collectively evaluated the evidence;

c. failed to meaningfully engage Plaintiffs' NOID response;

d. relied upon speculation rather than affirmative evidence;

e. drew irrational inferences from innocent facts;

f. discounted competent eyewitness testimony for reasons unsupported by law;

g. imposed extra-regulatory evidentiary requirements;

h. failed to explain why corroborating evidence was rejected; and

i. effectively imposed a burden of proof greater than a preponderance of the evidence.

287. These errors are not isolated.

288. Rather, they collectively demonstrate a failure to exercise the reasoned judgment required of an administrative agency.

COMPLAINT -- 48

289.    Although USCIS summarized portions of Plaintiffs' evidence, the decision does not meaningfully explain why the evidence failed to satisfy the governing legal standard.

290.    Nor does the decision demonstrate that USCIS considered Plaintiffs' evidence in the balanced and impartial manner required by the APA.

291.    By failing to engage in reasoned administrative decision-making, USCIS acted arbitrarily, capriciously, abused its discretion, and otherwise acted not in accordance with law.

## COUNT TWELVE

### The Derivative Denial of Plaintiff Liu's Form I-485 Must Be Vacated

### (Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A))

292.    Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth here.

293.    On July 21, 2026, USCIS denied Plaintiff Liu's Form I-485 Application to Register Permanent Residence or Adjust Status.

294.    USCIS expressly based that denial upon the prior denial of Plaintiff Bochner's Form I-130, concluding that Plaintiff Liu no longer had an immediately available immigrant visa and therefore was ineligible to adjust status.

295.    USCIS conducted no independent analysis of the bona fides of Plaintiffs' marriage beyond relying upon the denial of the Form I-130.

296.    Because the I-485 denial is wholly derivative of the challenged I-130 denial, it necessarily rises or falls with the legality of the I-130 adjudication.

297.    If this Court concludes that USCIS's denial of the Form I-130 was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law, the derivative denial of Plaintiff Liu's Form I-485 likewise cannot stand.

COMPLAINT -- 49

298.    Plaintiffs therefore seek vacatur of both agency decisions and remand for lawful reconsideration.

## COUNT THIRTEEN

### USCIS Failed to Consider the Totality of the Circumstances

### (Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A))

299.    Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth here.

300.    The Ninth Circuit has made clear that the determination whether a marriage is bona fide requires consideration of the parties' intent at the inception of the marriage and the totality of the evidence bearing upon that intent. *Bark v. INS*, 511 F.2d 1200 (9th Cir. 1975).

301.    Plaintiffs presented a comprehensive body of documentary and testimonial evidence reflecting multiple aspects of their married life.

302.    Rather than evaluating those circumstances collectively, USCIS repeatedly isolated individual categories of evidence and discounted each independently.

303.    The denial contains no meaningful discussion of the cumulative evidentiary force of Plaintiffs' financial records, residential documentation, insurance, tax filings, photographs, sworn declarations, and eyewitness testimony considered together.

304.    By failing to evaluate the totality of the circumstances, USCIS acted contrary to *Bark* and the Administrative Procedure Act.

## COUNT FOURTEEN

### USCIS Failed to Explain Its Rejection of Competent Eyewitness Testimony

### (Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A))

COMPLAINT -- 50

305.    Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth here.

306.    Plaintiffs submitted declarations from multiple independent witnesses possessing personal knowledge of their marriage.

307.    These witnesses described their observations under penalty of perjury and corroborated Plaintiffs' testimony concerning their relationship.

308.    USCIS did not find that any witness lacked credibility.

309.    USCIS did not identify any material inconsistency among the witnesses.

310.    USCIS did not conclude that any declaration contained false information.

311.    Nevertheless, USCIS afforded diminished evidentiary value to the declarations without meaningfully evaluating the substance of the witnesses' firsthand observations.

312.    The agency's failure to explain why competent eyewitness testimony was rejected prevents meaningful judicial review and violates the APA's requirement of reasoned decision-making.

313.    USCIS therefore acted arbitrarily, capriciously, abused its discretion, and otherwise acted not in accordance with law.

## COUNT FIFTEEN

**USCIS Improperly Rejected Competent Declarations Contrary to Its Own Policy Manual,**

**8 C.F.R. § 204.2(a)(1)(i)(B), *Matter of E-M-*, and 28 U.S.C. § 1746**

**(Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A))**

314.    Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth here.

COMPLAINT -- 51

315. USCIS's own Policy Manual expressly provides that strict rules of evidence do not apply in immigration benefits adjudications and that officers may consider a broad range of oral and documentary evidence.

316. The governing regulation, 8 C.F.R. § 204.2(a)(1)(i)(B), expressly recognizes affidavits from persons having personal knowledge of the bona fides of the marriage as appropriate evidence.

317. *Matter of E-M-*, 20 I. & N. Dec. 77 (Comm'r 1989), likewise recognizes affidavits from persons possessing personal knowledge as competent corroborative evidence in immigration adjudications.

318. Congress has further provided that declarations executed under penalty of perjury have the same force and effect as sworn affidavits. 28 U.S.C. § 1746.

319. Even under the Federal Rules of Civil Procedure, declarations based upon personal knowledge are competent evidence without any requirement that declarants attach government-issued identification. Fed. R. Civ. P. 56(c)(4).

320. Nevertheless, USCIS discounted Plaintiffs' declarations because they shared similar formatting and were not accompanied by identification documents.

321. Those requirements appear nowhere in the INA, the regulations, the USCIS Policy Manual, *Matter of E-M-*, 28 U.S.C. § 1746, or Rule 56(c)(4).

322. By imposing these extra-regulatory evidentiary requirements and discounting otherwise competent evidence on that basis, USCIS departed from its own published evidentiary standards without explanation.

323. Such an unexplained departure from governing legal standards is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

COMPLAINT -- 52

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court grant the following relief:

1) Assume jurisdiction over this matter;

2) Declare that Defendants violated the Administrative Procedure Act in adjudicating Plaintiffs' Form I-130 Petition for Alien Relative and the derivative Form I-485 Application to Register Permanent Residence or Adjust Status.

3) Hold unlawful and set aside USCIS's July 16, 2026 denial of Plaintiff Bochner's Form I-130 Petition for Alien Relative.

4) Hold unlawful and set aside USCIS's July 21, 2026 derivative denial of Plaintiff Liu's Form I-485 Application to Register Permanent Residence or Adjust Status.

5) Vacate both agency decisions pursuant to 5 U.S.C. § 706(2).

6) Remand the matter to USCIS with instructions to reconsider the Form I-130 and Form I-485 under the correct legal standards, including:

   a. the preponderance-of-the-evidence standard recognized in   Matter of Chawathe;

   b. the bona fide marriage standard articulated in *Bark v. INS* and *Matter of Laureano*;

   c. the evidentiary standards contained in the USCIS Policy Manual;

   d. 8 C.F.R. § 204.2(a)(1)(i)(B);

   e. *Matter of E-M-*; and

   f. all other applicable statutes, regulations, and precedents.

7) Retain jurisdiction, if appropriate, to ensure compliance with the Court's remand order.

8) Award reasonable costs and attorney's fees as provided in the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412; and

COMPLAINT -- 53

9) Grant such further relief as the Court deems just and proper.

Respectfully submitted,

Dated this 29th day of July 2026

Baolin Chen, OSB No. 93232
Chen & Mu Attorneys
1255 NW 9th Ave, Suite 115
Portland, OR 97209
Telephone (503) 222-3384
Fax (503) 296-5821
baolinchen@usworkingvisa.com
Attorney for Plaintiffs

## TABLE OF EXHIBITS

**Exhibit A:**    Plaintiffs' Marriage Certificate;
**Exhibit B:**    I-130 Receipt Notice;
**Exhibit C:**    I-485 Receipt Notice;
**Exhibit D:**    Documents Submitted by Plaintiffs Prior to I-130 Interview;
**Exhibit E:**    Plaintiffs' Interview Notice;
**Exhibit F:**    Copy of USCIS's NOID;
**Exhibit G:**    Copy of Plaintiffs' NOID Response;
**Exhibit H:**    I-130 Denial Notice;
**Exhibit I:**    I-485 Denial Notice; and
**Exhibit J:**    *Berrios v. Holder*, 502 F. App'x 100 (2d Cir. 2012) (summary order).

COMPLAINT -- 54